Keri Avellini, Esq. - 036641998
60 Evergreen Pl., Ste. 502
East Orange, New Jersey  07018
(973) 675-8277
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHRISTOPHER DONOHUE, ANNA FERGUSON, JENNIFER GREENE and BRYAN SAVITZ, PAMELA KIM, COLLEEN LYNCH, REBECCA SCHEER, KEITH STECKER and STEPHANIE STECKER, MICHAEL WITRIOL and RACHEL WITRIOL,<br><br>    Plaintiffs,<br><br>v.<br><br>SOUTH ORANGE-MAPLEWOOD SCHOOL DISTRICT, SOUTH ORANGE-MAPLEWOOD BOARD OF EDUCATION, DR. RONALD G. TAYLOR, SUPERINTENDENT OF THE SOUTH ORANGE-MAPLEWOOD SCHOOL DISTRICT,<br><br>    Defendants. | DOCKET NO.:2:21-cv-1374<br><br><br>**COMPLAINT FOR DECLARTORY RELIEF AND TEMPORARY INJUNCTION** |

Plaintiffs, CHRISTOPHER DONOHUE, ANNA FERGUSON, JENNIFER GREEN and BRYAN SAVITZ, COLLEEN LYNCH, PAMELA KIM, , REBECCA SCHEER, KEITH STECKER and STEPHANIE STECKER, MICHAEL WITRIOL, and RACHEL WITRIOL, by way of Complaint against Defendant(s) SOUTH ORANGE MAPLEWOOD SCHOOL DISTRICT, SOUTH ORANGE-MAPLEWOOD BOARD OF EDUCATION, DR. RONALD G. TAYLOR, says:

### THE PARTIES

1. Plaintiffs are residents of South Orange and Maplewood, New Jersey whose children attend different schools located in the South-Orange Maplewood School District.

2. Plaintiff Christopher Donohue is the parent of M.R.D., age 11, who is in the sixth grade at South Orange Middle School, and of M.M.D., age 14, who is a freshman at Columbia High School.

3. M.R.D. is a Special Education student with an Individual Education Plan ("IEP"). In late November 2020, M.R.D. began refusing school due to heightened levels of anxiety that was caused by school closures and remote learning. As a first-year middle schooler, she has not had any social interactions with any of her teachers or peers. Her social and emotional growth has stunted. M.R.D. has regressed with respect to everything she has

achieved when she first became a recipient of the District's special education services approximately two years ago, academically, and otherwise. When pressed, her special education case manager and Dr. Alegria, the head of Special Education in the South Orange-Maplewood School District, recognized M.R.D.'s issues but advised that there was nothing they could or would do to help her because that would require them to help other children as well.

4. M.D.D. a ninth grader at Columbia High School came to the district from the local parochial school. With having only two days in school to date, she has not been able to participate in any traditional high school activities, including extra-curricular or other educational opportunities that would permit her to become the best version of herself, and which would also increase her opportunities for success in the future. As a young adult, her confidence in herself has decreased. She suffers emotionally as she has not made any new friends and remains home alone and isolated, spending most of her day on harmful social media apps such as TicToc.

5. Plaintiff Pamela Kim is a parent of Q.O.K., age 10, who is in the fifth grade at Jefferson Elementary School, and of W. G. K., age 5, who is a kindergartener at Marshall Elementary School.

6.  Q.O.K. has consistently tested in the top percentiles and has performed in the classroom accordingly. Since the onset of remote learning, his performance has dropped significantly to the equivalent of consistent "C" grade or "D" graded work. And his emotional well-being and interest in school have waned. More recently he has complained of frequent headaches after prolonged sessions in front of the computer.

7.  W.G. K. is experiencing her first year in elementary school without the foundational interaction with peers and teachers so critical to formative learning that naturally occurs in the classroom setting. The online technology and tools upon which remote learning is dependent, is an overwhelming obstacle for children of her age who are not yet fully literate. Trying to follow written or multi-step verbal instructions to go between scheduled links and class segments often causes W.G.K. and other students to partially or completely miss lessons altogether.

8.  Plaintiffs Michael Witriol and Rachel Witriol are parents of TEW, age 6, who is a Kindergarten student at Tuscan Elementary School.

9.  TEW did not enter his Kindergarten classroom or meet his teacher in-person until January 20, 2021, and attended only two half-days of in-person learning before SOMSD returned to all-virtual instruction on January 27, 2021.  Plaintiffs' ability to coach, monitor, intervene and support TEW's

virtual learning at home is severely limited by their responsibilities to their full-time jobs.

10. TEW has been attending the YMCA's aftercare program in the same physical school building (Tuscan) nearly every school day since October 2020. The building has been deemed safe for the students and YMCA staff to operate the aftercare program. At additional expense to Plaintiffs, the YMCA program has provided crucial social, emotional and learning support for TEW during this time as TEW has been struggling with the social isolation of remote learning.

11. Plaintiff Michael Witriol was raised in Maplewood, and attended Clinton Elementary School, South Orange Middle School, and graduated from Columbia High School, and returned to raise his family here in large part due to SOMSD's excellent reputation. However, the same right to an education that was guaranteed to Plaintiff is being denied to his son, TEW.

12. Plaintiff Keith and Stephanie Stecker are parents of H.S., age 7, who is in the 2nd grade at South Mountain School, and A.S., who is in 10th grade at Columbia High School.

13. H.S. used to love learning and going to school. In the spring, when the schools first closed, he had almost no interaction with his teacher, and as a result of two parents who worked full time and could not take on the level

of instruction that was necessary, he learned very little between mid-March and June, with the exception of some reading that he did with his grandmother, and some math that he did with his grandfather. This school year, he has become increasingly frustrated and upset, and now lacks focus and engagement, and as a result is not learning and growing as he should. Virtual school lacks the needed time and tools for the teacher to ensure kids understand the lesson as the shortened day is rushed and understanding kid's behavior is limited over the screen. He is having outbursts and tantrums daily like a 4-year old, and often says he is "stupid" and "the dumbest kid in the class."

14. Rebecca Scheer is the parent of J.C., a kindergartener in the District.

15. Virtual learning is not working for J.C.. He is too young to be expected to sit in front of a computer all day. He won't stay in his seat. He has never met and doesn't feel any sense of attachment to the other kids in his class, or to his teacher. Staring at a screen all day for class makes no sense to him. Plaintiff and her husband try to get J.C. to stay engaged, but physically restraining him in his seat is not an option and would also be grounds for a visit from the Department of Children and Families. Because both parents work, they cannot constantly monitor their sone, leaving him to roam the house on his own most days during class time.

16. Conversely, on the one day that J.C. got to attend school in person, he had a great day.  His teacher was able to display her computer screen on her smart board, and her microphone picked up the in-person children's voices, so he could look at the screen and not his Chromebook, aside from working on programs like ST Math and Seesaw.  He told his parents that liked his day in class because "I didn't have to use my computer." His teacher said that he participated in class all day and completed his work, a first for him this year.  He kept on his mask all day.

17. Plaintiffs Jennifer Greene and Bryan Savitz are parents of L.M.S., age 9, who is a 4th grader at Jefferson Elementary.

18. L.M.S. has been out of his school, Jefferson Elementary in Maplewood, New Jersey, since March of 2020. Right before the district closed down due to COVID-19, he was diagnosed with Eye Convergence issues by a privately hired Occupational Therapist and subsequently Pediatric Optometrist. After much struggle from our side to get the district and administrations attention he finally received an IEP from the SOMA school district. His IEP is in both Reading and Writing. His IEP plan specifically states that he is to receive one hour per day of special instruction in the subject of Reading, one hour per day of special instruction in Writing, and two individual OT sessions per week. This is simply not happening for him.

This is of no fault of his teachers or OT professionals but, is simply a result of the format that the school district is saying they are able to deliver it, remotely. L.M.S. is an only child and since COVID 19, and all of the back-and-forth announcements from the district, he has suffered not only educationally but emotionally. At the very beginning of this pandemic, it was an understandable situation. At this point it is abundantly clear that this is due to reckless negligence and incompetence.

19. Plaintiffs are extremely worried about L.M.S. The boy who he was in March of 2020 is not the boy he is now. He is severely depressed and his lack of drive, excitement and zest for learning and just being generally social, albeit always selectively, has all but vanished at this point. He is seeing a private therapist and doing as much physical activity as possible. His social emotional and educational well-being are severely damaged, we believe, due to the district's negligence, lack of vision, creativity and seemingly care.   He has now been diagnosed with Social Anxiety and has a hard time being around groups of more than one or two children because of the isolation he has been forced to endure because of the schools have not reopened.

20. Coleen Lynch is a parent of R.T.L. who is in second grade at Marshall Elementary School and C.M.L. who is in kindergarten at Marshall Elementary.

21. R.T.L. is a special education student with an IEP. In October 2020, we had a meeting with Mara Fox his case manager, his teachers Mrs. Wyche, Mrs. Kaeshafer and his behavior therapist Jill Saxon. I let them know how much he was struggling with online learning and how he was unable to complete the work on his own. Unless I sit with him the whole time, and walk him through the work, he does not participate. His lack of executive functioning makes it hard for him to do any type of work on the computer. The teachers repeatedly said that all the kids were behind. Shortly after we appealed directly to Dr. Allegria, letting her know Robert's IEP was not being followed and that he was regressing. Her response was that she could not send a para to my home.

22.. Plaintiff Anna Ferguson is a parent of D.A.F., age 7, who is in the second grade at Marshall School and of M.E.F., age 5, who is a kindergartener at Marshall School.

23. D.A.F. is a special education student with an Individual Education Plan that includes In-Class Resource Support in Reading and Math for a total of 180 minutes a day. Additionally, he is entitled to 30 minutes of Counseling, 60

minutes of Occupational Therapy, and 30 Minutes of Physical Therapy a week. Because of my son's learning challenges, he has been unable to take advantage of almost any of the virtual versions of these. Because of the lack of in-person instruction that he requires, he has experienced significant regression, academically, socially, and physically. He has relied on full time school and related services to progress. He has become aggressive (sometimes physically), and is depressed and listless. His hypotonia worsened as a result of his inability to get OT and PT in-person. Consequently, he has been prone to constant injuries from falling, tripping, flopping, and flailing. He lost his interest and ability to participate in regular activities like playing with friends, going on a playground, riding a bike, or participating in sports. D.A.F. was at the top of his class (according to his teachers) as of March 2020. He is not the same child he was a year ago. He used to be a positive, happy boy who loved school and now he is an unhappy, emotionally dysregulated boy who hates school and learning. Multiple meetings with the Special Services team proved to be fruitless. At one point, Special Services supervisor Karen Thomany implied that there was something wrong with D.A.F. that, as a 6 year old with a learning disability, he was unable to benefit from virtual learning. We were promised in October that a behaviorist would work with us and even after

following up the Special Services Department never delivered. The only thing that has worked to get D.A.F. to sit for virtual learning has been full time supervision.  We have paid thousands of dollars for consultants, therapists, pod learning groups, babysitters, and the Y.

24. The South Orange-Maplewood School District ("SOMSD") is a school district in the State of New Jersey that serves the residents of both Maplewood and South Orange.

25. SOMSD provides public education to the residents of South Orange and Maplewood from PreK though twelfth grade. The schools located in the SOMSD are: Montrose Early Childhood Center; Tuscan Elementary School; South Mountain Elementary School; Seth Boyden Demonstration School; Marshall Elementary School; Jefferson Elementary School; Clinton Elementary School; Maplewood Middle School; South Orange Middle School; and Columbia High School.

26. The South Orange-Maplewood Board of Education ("Board") is the governing body of the South Orange-Maplewood School District ("District") with responsibility for developing policy to ensure the proper care, management and control of District affairs. The Board consists of nine citizens elected at large by the voters of South Orange and Maplewood.

Board members serve three-year terms, with three members of the Board subject to election each year.

27. In addition to setting policy, the Board hires the superintendent; approves staff hirings, transfers, resignations, terminations, and leaves of absence; approves expenditures; approves educational programs (curriculum); and otherwise ensures that the facilities and equipment are available to support learning and teaching in the District. The Board also approves the budget for the School District.

28. Dr. Ronald G. Taylor ("Superintendent") is the Superintendent of the South Orange-Maplewood School District. As the District's Superintendent, Dr. Taylor is the chief executive officer for SOMSD. He is responsible for the effective operation of the District; for the general administration of all instructional, business or other operations of the District; and for advising and making recommendations to the Board with respect to such activities. He is responsible for enforcing all provisions of law and all rules and regulations relating to the management of the schools within the District, and other educational, social and recreational activities under the direction of the South Orange-Maplewood Board of Education. Dr. Taylor is the individual who is ultimately responsible for closing all of the schools in the

South Orange-Maplewood School District since the beginning of the COVID-19 pandemic.

## **NATURE OF ACTION**

29. With the onset of the COVID-19 pandemic, Defendants have effectively put the interests of the children they serve dead last. With their arbitrary rules that fly in the face of the recommendations of experts across different disciplines, the children of the District have been deprived of their right to an education. Sadly, there has been no one to speak for our children over the last ten months as they silently suffered with remote learning. This lawsuit seeks to remedy the situation on their behalf.

30. This Action is brought pursuant to 42 U.S.C. § 1983, on the grounds that Defendants have violated Plaintiffs' constitutionally and federally protected rights, including specifically: (1) the right to substantive due process (U.S. Const. amend. XIV); (2) the right to equal protection, free from arbitrary treatment by the State (U.S. Const. amend. XIV); (3) the right to equal and meaningful access to education, free from arbitrary state action resulting in a disparate impact on those with disabilities (Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq.; Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, et seq.; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq.)).

31. With the school year still operating remotely almost a year after the District schools were closed, time is of the essence. The Court should not hesitate to secure Plaintiffs' fundamental rights in securing a basic minimum education for their children are preserved and protected from Defendants' arbitrary actions.

## JURISDICTION & VENUE

32. Jurisdiction is proper pursuant to 42 U.S.C. § 1983 as it related to Defendants' violation of Plaintiffs' constitutional rights to due process and equal protection as per the Fourteenth Amendment to the United States Constitution.

33. Further, federal question jurisdiction exists under 28 U.S.C. § 1331 and 1343.

34. The court has the authority to award the relief requested by Plaintiffs as per 28 U.SC. §§ 2291; 1343 (a) and 42 U.S.C. § 1983.

35. Attorneys fees and costs may also be awarded as per 42 U.S.C. § 1988.

36. Supplemental jurisdiction exists over Plaintiff's State Law Claims pursuant to 28 U.S.C. § 1367.

37. The events complained of herein took place within the jurisdiction of the United States District Court for the District of New Jersey.

## STATEMENT OF CLAIMS AGAINST DEFENDANTS

38. At the onset of the COVID-19 pandemic in 2020, on March 13, 2020, Dr. Taylor announced that as of "Monday, March 16 thru March 27, 2020 we have made the decision to enact our SOMSD emergency closure plan and all District schools will be closed for a period of at least two-weeks." *See* **Exhibit "A."**

39. On April 7, 2020 Dr. Taylor announced that all schools in the District would be closed indefinitely pursuant to the order of Governor Phil Murphy. *See* **Exhibit "B."**

40. On July 31, 2020, Dr. Taylor announced that school would re-open in September and that families would have the option of choosing "Virtual Only Instruction" or "Hybrid Instruction." *See* **Exhibit "C."**

41. "Virtual Only Instruction" was defined as follows: **"Option 1:  Virtual Instruction (online/remote)**: Selecting this option means your child will learn at home. Virtual instruction will be provided online via the District's new learning management system, 'Canvas.' Students will be provided virtual lessons with teachers and classmates, as well as self-paced activities, projects, and assignments. Daily attendance will be taken and students will have a full course-load of instruction.  Teachers will use Canvas to provide distance learning for students." *See* **Exhibit "C."**

42. "Hybrid Instruction" was defined as follows: "**Option 2: Hybrid Instruction (combination in-person/online)**: Selecting this option means your child will attend school in person two* days per week on an alternating schedule and will learn from home virtually using Canvas during the remainder of the week. This will allow for much smaller class sizes to meet the social distancing requirements. Students would be assigned specific days to attend each week. SOMSD will make every effort to schedule students from the same family on the same days.  In both hybrid and virtual learning models, your child will have access to live support and conferring sessions with SOMSD instructors." *See* **Exhibit "C."**

43. On August 14, 2020, Dr. Taylor announced that only remote or virtual learning would be offered when school reopened in September 2020. He also announced that students would be able to return to in-person hybrid learning on November 12, 2020. *See* **Exhibit "D."**

44. On October 22, 2020, Dr. Taylor announced that the November 12, 2020 return to school date was being reassessed due to concerns regarding ventilation updates in the school buildings. *See* **Exhibit "E."**

45. On October 27, 2020, Dr. Taylor announced that in-person learning would not return to the South Orange Maplewood School District until January 19, 2021. *See* **Exhibit "F."**

46. On January 12, 2021, Dr. Taylor announced that in-person hybrid learning would only be opened to PreK though second grade, sixth grade and ninth-grade students.  Dr. Taylor explained that "[a]fter conferring with our local towns' health departments and internal district health professionals, the District has decided that we will extend the duration of the Phase 3 re-entry stage and pause the launch of Phase 4 (which was set to begin on January 25). *See* **Exhibit "G."**

47. Since March 13, 2020, Defendants have only offered a total of four days of in person learning for students in PreK though second grade, sixth grade and ninth grade. Students in grades three to five, seven and eight, and ten through twelve had had no in-person instruction since March 13, 2020.

48. The district schools were closed to in-person learning on January 26, 2021, and then are presently set to resume a hybrid schedule on February 1, 2021.

49. Since the start of remote-only learning in September 2020, Defendants decided to move all of the "specials" such, art, music and physical education classes, to the afternoon hours. With Plaintiffs and other families in the district needing to utilize the South Mountain YMCA's aftercare program, their children were not able to participate in any of these specials, and continue to be denied further education in these areas with the current schedule that is in place.

50. Additionally, Columbia High School and other schools in the District have had their school hours shortened to half-days, every day of the week. This schedule will continue even as hybrid learning takes place. No children in the district will have more than four hours in the building, effectively depriving them of hundreds of hours instructional time over the course of the school year.

51. More significantly, the South Mountain YMCA has been, and continues to provide, after-care services for Plaintiff's children, and other children in the District, *in the District's school buildings,* buildings that were collectively deemed "unsafe" by Defendants, without any significant spread of COVID-19.

52. As a result of Defendants' actions, Plaintiffs' children and many other children in the district have experienced ineffective and substandard learning through remote means, all the while forcing children into isolation, and causing academic stagnation and regression.

53. More significantly, Defendants' actions have harmed children's mental and emotional health and have put the children in the district at risk for long-term mental health problems.

54. Also, there is little evidence that with appropriate safety measures in place, such as masks, social distancing, and proper ventilation, school- aged children transmit COVID-19 to teachers or adults in a school setting.

55. Pending in the United States District Court for the District of New Jersey is the action of *Dembiec, et als, v. Scotch Plains Fanwood Regional School District*, Civil Action No.: 20-cv-20188. The *Dembiec* Complaint outlines the relevant scientific studies that collectively show that COVID-19 is not a risk amongst school aged children *See* **Exhibit "H."**. Plaintiffs hereby incorporate the paragraphs of the *Dembiec* Complaint as though fully set forth herein.

56. Science supports school reopening full-time five days a week.

57. School-based transmission is minimal relative to non-school-based transmission and must be contextualized relative to community spread.

58. The COVID-19 School Dashboard, put into place by data scientists and superintendents at over 5,000 schools, comprising over four million students and 1.3 million staff members, gathers information on new COVID-19 cases as broken down by key variables including school type, age of children, PPE usage, density of region, etc. When looking at New Jersey elementary school data, we can see that as of early December 2020, for staff who are teaching in public elementary school remotely, the

infection rate is 0.30%. For staff teaching in schools at 50% capacity, it is 0.32%. For staff who are teaching at 90% or more capacity, it is 0.26%. (*See* https://covidschooldashboard.com).

59. The infection rate in elementary school staff teaching remotely is actually 15% higher than for staff teaching full-time in person. In all cases, it is significantly lower than the rate of infection in the matched surrounding community samples (e.g., 4.8%, 4.2%, 4.1%). In communities that have in-person schooling, the overall infection rate is not higher than that of communities with remote schooling. This suggests that not only is re-opening elementary schools full-time not exacerbating spread of COVID-19 to the teachers, but also the larger community. (*See* https://covidschool dashboard.com).

60. Children ten and under are unlikely to be infected with COVID-19, relative to adults. If they are infected, they are unlikely to face severe complications from COVID-19. (*See* https://www.cureus.com/articles/35775-prevalence-of-asymptomatic-sars-cov-2-infection-in-children-and-adults-in-marion-county-indiana).

61. In a community sample of children, very few children under ten years of age tested positive for COVID-19, either symptomatically or asymptomatically, i.e., one case, out of 119 confirmed cases. This is now

the third such community study to document either no cases or a single case of COVID-19 in children under ten. (*See* https://pubmed.ncbi. nlm.nih.gov/32289214).

62. Even in a symptomatic sample, the rate of infection for children ages five to nine is 0.25%, far lower than adult infection which was 98.3%. (*See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7147903/).

63. When children do get COVID-19, the rate of hospitalization is .008 %. (*See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/pediatric-hcp.html).

64. Despite initial concerns that children would asymptomatically spread COVID-19, the most recent research does not support elementary-aged children as super-spreaders or highly infectious. It is extremely difficult to obtain data on asymptomatic children, who are infrequently tested, but a community-based sample in the US found that asymptomatic children do not seem to be spreading the virus. (*See* https://www.cdc.gov/coronavirus /2019-ncov/hcp/pediatric-hcp.html).

65. Even in symptomatic cases, children transmit the virus at far lower rates than adults. (*See* https://www.nytimes.com/2020/08/14/health/older-children-and-the-coronavirus-a-new-wrinkle-in-the-debate.html).

66. Both globally and locally, elementary schools have safely reopened, even in the context of high community spread. (*See* **Exhibit "I"**).

67. Local schools, such as Our Lady of Sorrows School and St. Rose of Lima, have been in school for five days a week since the beginning of the school year, with no major outbreaks despite being in school full-time. This lack of outbreaks has held even in areas with high community spread, and even in schools in which social distancing occurs at less than the recommended six feet. (*See* https://tucson.com/news/local/despite-covid-19-cases-surge-virus-spread-in-tucson-schools-remains-low/article.*)*

68. The American Academy of Pediatrics ("AAP") recommends that learning take place while the students are physically present in school.

69. The AAP noted the health benefits that would otherwise be lost, such as child development, social and emotional skills, reliable nutrition, physical, speech and mental health therapy, as well as opportunities for physical activity. (*See* https://services.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/*)*.

70. The AAP also explained that lengthy time away from school and associated interruption of supportive services often results in isolation, making it difficult for schools to identify and address important learning deficits as well as child and adolescent physical or sexual abuse, substance use, depression, and suicidal ideation.

71. Furthermore, it is widely accepted that special education students are particularly harmed by remote learning.

72. Under federal law, students with disabilities are guaranteed a Free Appropriate Public Education (FAPE), as incorporated through the IDEA ACT 34 C.F.R. § 300.101, and Title III of the Americans with Disabilities Act of 1990 ("ADA"), § 504 of the Rehabilitation Act of 1973.

73. Plaintiffs and other parents in the district have expressed their distraught concern with remote learning in the District. They have reported that their children received none, or nearly none, of the individualized and specialized instruction guaranteed by law when schools closed in March 2020. The District has made zero provisions for delivering these federally mandated services to special education children, despite the federal funding the state received that was conditioned upon providing these services. Accordingly, children with disabilities were especially harmed by Defendants' actions.

74. Many individualized education programs (IEPs) simply cannot be implemented in a virtual-learning environment. For example, many IEPs require individualized instruction, such as a one-on-one aide. Failure to comply with a child's IEP can have grave consequences, such as regression.

75. While not unique to students with disabilities, socialization in schools is critical for special needs children.

76. The Center for Disease Control ("CDC") recommends that all students return to school for in-person learning.

77. The CDC reported that the lack of in-person educational options disproportionately harms low-income and minority children and those living with disabilities. These students are far less likely to have access to private instruction and care and far more likely to rely on key school-supported resources like food programs, special education services, counseling, and after-school programs to meet basic developmental needs. (*See* https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/schools.html).

## COUNT ONE

### 42 U.S.C. § 1983
### Violation of Due Process under the Fourteenth Amendment

78. Plaintiffs hereby incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

79. The Due Process Clause of the Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property, without due process of law. U.S. Const.14 amend XIV.

80. In particular, the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. *Washington v. Glucksberg*, 521 U.S. 702, 720-721 (1997). Plaintiffs and their children have a fundamental right to a basic, minimum education.

81. Access to a foundational level of literacy provided through public education has an extensive historical legacy and is so central to our political and social system as to be "implicit in the concept of ordered liberty." *Id.*

82. The Due Process Clause has also been read to recognize that certain interests are so substantial that no process is enough to allow the government to restrict them, at least absent a compelling state interest. *Id.* at 719-21.

83. The Constitution provides a fundamental right to a basic minimum education. *Gary B. v. Whitmer*, 957 F.3d 616 (6th Cir. 2020), *vacated en banc without decision*, 958 F.3d 1216 (6th Cir. 2020).

84. Defendants have deprived Plaintiffs and their children of this fundamental right in violation of the Fourteenth Amendment to the U.S. Constitution, by effectively denying children a basic minimum education and their fundamental right to literacy.

85. The United States Constitution entitles Plaintiffs to be free from any burden to a fundamental right unless the infringement is narrowly tailored to serve a compelling state interest.

86. Defendants lack any compelling, or even rational, interest for burdening Plaintiffs' children of their fundamental right to a basic minimum education.

87. The weight of the evidence shows that children's transmission and infection rates cannot justify school closures. Defendants further ignore that the evidence of mortality risk and severe adverse health outcome risk to children from COVID-19 disease is virtually non-existent.

88. Risk to teachers may be managed just as risk to other essential workers is managed in New Jersey, by offering choices and providing protection. The challenges posed by the situation pale in comparison to the harm being inflicted on Plaintiffs' families through the deprivations of their constitutional rights.

89. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from shutting down the schools.

90. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive

relief invalidating and restraining enforcement of the Defendants' Order to shut down the schools.

## COUNT TWO

### 42 U.S.C. § 1983
### Violation of the Equal Protection Clause under the Fourteenth Amendment Arbitrary School Closures

91. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

92. The Equal Protection Clause prohibits governmental classifications that affect some groups of citizens differently than others. *Engquist v. Or. Dept. of Agric.,* 553 U.S. 591, 601 (2008). The touchstone of this analysis is whether a state creates disparity between classes of individuals whose situations are arguably indistinguishable. *Ross v. Moffitt,* 417 U.S. 600, 609 (1974).

93. In addition to the pivotal role of education in sustaining our political and cultural heritage, denial of education to some isolated group of children poses an affront to one of the goals of the Equal Protection Clause which is the abolition of barriers which present unreasonable obstacles to advancement on the basis of individual merit.

94. Paradoxically, by depriving the children of any disfavored group of an education, we foreclose the means by which that group might raise the level of esteem in which it is held by the majority.

95. Defendants' shutdown of public schools violates Plaintiffs' and their children's right to equal protection.

96. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their and or their children's constitutional rights unless Defendants are enjoined from shutting down public schools.

97. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Defendants' Orders and any associated guidance documents.

## COUNT THREE

### 42 U.S.C. § 1983
### Violation of Federal Disability Rights Statutes; Failure to Provide Appropriate and Equal Educational to Disabled Students

98. Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

99. Federal law provides all disabled children in New Jersey the right to a free appropriate public education, individualized education plans conferring

educational benefit, appropriate identification and evaluation, and the right to be free from discrimination on the basis of any disability, including through the exclusion from or deprivation of equal access to the educational opportunities. *See* 20 U.S.C. § 1400, et seq. (Individuals with Disabilities Education Act ("IDEA")); 42 U.S.C.A. § 12131, et seq., (Title II of the Americans with Disabilities Act of 1990 ("ADA")); 29 U.S.C. § 794, et seq., (Section 504 of the Rehabilitation Act of 1973).

100.    Defendants' arbitrarily imposed restrictions on the reopening of schools, including the forced closure all schools in the District and the imposition of online learning, deprives Plaintiffs' children of these rights, which are secured by the above-cited federal laws.

101.    Defendants acted knowingly, recklessly, and with deliberate indifference to the rights of Plaintiffs by forcibly denying disabled students with specialized instruction and related services commensurate with the schools' obligations under federal law, as well as from providing disabled students equal access to education as required by federal law.

102.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm in the form of the deprivation of educational opportunities, related services, and other educational and non-discrimination rights

secured by federal law, unless Defendants are enjoined from implementing and enforcing the school closure.

103.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the state orders and any associated guidance.

### COUNT FOUR

**Deprivation of Thorough and Efficient System
of Free Public Schools – N.J.S. 10:6-2 & N.J. Constitution, Art. 8, § IV ¶**

104.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

105.    N.J. Constitution, Art. 8, § IV, provides for the Maintenance and Support of thorough and efficient system of free public schools.

106.    Here, the Defendants have failed in their obligation to provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all children.

107.    Distance learning does not satisfy the Defendants' obligation to provide Plaintiffs and those similarly situated their constitutional right to an adequate education.

108.   Plaintiffs have no adequate remedy at law and will suffer continuous, serious and irreparable harm to their state constitutional rights unless Defendants are enjoined from implementing and enforcing their broad prohibitions on in-person education and the Defendants are enjoined from providing distance learning while all the surrounding communities are providing in school learning.

109.   Pursuant to N.J.S. 10:6-2, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Defendants' Orders and any associated guidance documents.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully ask this Court to grant Plaintiffs the following relief:

1. A declaratory judgment that the Defendants shutting down of all in-person learning is unconstitutional, and in violation of the Individuals with Disabilities Education Act (20 U.S.C. § 1400, et seq.); Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12131, et seq.); and/or Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794, et seq.); and

2. Temporary, preliminary, and permanent injunctive relief enjoining Defendants from further denying all in-person learning;

3. Temporary, preliminary, and permanent injunctive relief enjoining the shutdown of all in–person learning;

4. An order requiring that Defendants issue new guidance reinstating in-person instruction for at least five full days per week in all schools without delay; and

5. An award of Plaintiffs' reasonable attorney fees, costs, and expenses under applicable state and or federal law; and

6. Any other such further relief to which Plaintiffs or which the Court determines to be just and proper.

Dated: 1/29/2021

Keri Avellini, Esq.
60 Evergreen Pl., Ste. 502
East Orange, New Jersey  07018
(973) 675-8277
keri@goldsteinlaw.com
Attorneys for Plaintiffs

## STATEMENT PER LOCAL RULE 10.1

Christopher Donohue
15 Lenox Terrace
South Orange, NJ 07079

Anna Ferguson
507 Page Terrace
South Orange, NJ 07079

Jennifer Greene & Bryan Savitz
403 Vose Ave.
South Orange, NJ 07079

Pamela Kim
256 Charlton Ave
South Orange NJ 07079

Coleen Lynch
281 Underhill Road
South Orange 07079

Rebecca Scheer
27 Tuscan Road
Maplewood 07040

Keith & Stephanie Stecker
380 Harding Drive
South Orange 07079

Michael & Rachel Witriol
83 Courter Avenue
Maplewood 07040

South Orange-Maplewood School
South Orange-Maplewood Board of Education
Dr. Ronald G. Taylor, Superintendent of South Orange Maplewood School District
525 Academy Street
Maplewood, NJ 07040

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Christopher Donohue, et als.

**(b)** County of Residence of First Listed Plaintiff   ESSEX
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Keri Avellini, Esq.
60 Evergreen Place, Suite 502
East Orange, NJ 07018

## DEFENDANTS
South Orange-Maplewood School District, et als.

County of Residence of First Listed Defendant   ESSEX
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**  **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product  Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability  ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &  Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander  Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'  Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability  ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine  Injury Product | | ☐ 880 Defend Trade Secrets | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product  Liability | **LABOR** | Act of 2016 | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability  **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | | (15 USC 1681 or 1692) |
| of Veteran's Benefits | ☐ 350 Motor Vehicle  ☐ 370 Other Fraud | Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | Protection Act |
| ☐ 190 Other Contract | Product Liability  ☐ 380 Other Personal | Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal  Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury  ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | Exchange |
| | ☐ 362 Personal Injury -  Product Liability | Leave Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | ☐ 790 Other Labor Litigation | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**  **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights  **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting  ☐ 463 Alien Detainee | | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment  ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/  Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations  ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -  ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment  **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities -  ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other  ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education  ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. sect. 1983
Brief description of cause:
Violation of Constitution Rights Caused by School Closures

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   1/29/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____