Keri Avellini, Esq. - 036641998
60 Evergreen Pl., Ste. 502
East Orange, New Jersey  07018
(973) 675-8277
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHRISTOPHER DONOHUE, individually and as guardian for M.R.D. and M.M.D., minors, ANNA FERGUSON, individually and as guardian for D.A.F. and M.E.F., minors, JENNIFER GREENE and BRYAN SAVITZ, individually and as guardians for L.M.S., a minor, PAMELA KIM, individually and as guardian of Q.O.K. and W.G.K., minors, COLEEN LYNCH, individually and as guardian for R.T.L. and C.M.L., minors, KEITH STECKER and STEPHANIE STECKER, individually and as guardians for H.S. and A.S., minors, MICHAEL WITRIOL and RACHEL WITRIOL, individually as guardians for T.E.W. a minor, HANNA SPECTOR, individually and as guardian for M.S., H.S. and S.S., minors, and LAURA FRENCH, individually and as guardian for C.B., a minor,<br><br>        Plaintiffs,<br><br>v.<br><br>SOUTH ORANGE-MAPLEWOOD SCHOOL DISTRICT, SOUTH | DOCKET NO.:2:21-cv-1374<br><br>**SECOND AMENDED COMPLAINT FOR DECLARTORY RELIEF AND TEMPORARY INJUCTION AND COMPENSATORY DAMAGES** |

|  |  |
| --- | --- |
| ORANGE-MAPLEWOOD BOARD OF EDUCATION, DR. RONALD G. TAYLOR, SUPERINTENDENT OF THE SOUTH ORANGE-MAPLEWOOD SCHOOL DISTRICT, SOUTH ORANGE MAPLEWOOD EDUCATION ASSOCIATION, ROCIO LOPEZ,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiffs, CHRISTOPHER DONOHUE, individually and as guardian for M.R.D. and M.M.D., minors, ANNA FERGUSON, individually and as guardian for D.A.F. and M.E.F., minors, JENNIFER GREENE and BRYAN SAVITZ, individually and as guardians for L.M.S., a minor, PAMELA KIM, individually and as guardian of Q.O.K. and W.G.K., minors, COLLEEN LYNCH, individually and as guardian for R.T.L. and C.M.L., minors, KEITH STECKER and STEPHANIE STECKER, individually and as guardians for H.S. and A.S., minors, MICHAEL WITRIOL and RACHEL WITRIOL, individually as guardians for T.E.W. a minor, HANNA SPECTOR, individually and as guardian for M.S., H.S. and S.S., minors, and LAURA FRENCH, individually and as guardian for C.B., a minor, by way of Complaint against Defendant(s) SOUTH ORANGE MAPLEWOOD SCHOOL DISTRICT, SOUTH ORANGE-MAPLEWOOD BOARD OF EDUCATION, DR. RONALD G. TAYLOR, SOUTH ORANGE MAPLEWOOD EDUCATION ASSOCIATION, AND ROCIO LOPEZ says:

## **THE PARTIES**

1.  Plaintiffs are residents of South Orange and Maplewood, New Jersey whose children attend different schools located in the South-Orange Maplewood School District.

2.  Plaintiff Christopher Donohue is the parent of M.R.D., age 11, who is in the sixth grade at South Orange Middle School, and of M.M.D., age 14, who is a freshman at Columbia High School.

3.  M.R.D. is a Special Education student with an Individual Education Plan ("IEP"). In late November 2020, M.R.D. began refusing school due to heightened levels of anxiety that was caused by school closures and remote learning. As a first-year middle schooler, she has not had any social interactions with any of her teachers or peers. Her social and emotional growth has stunted. M.R.D. has regressed with respect to everything she has achieved when she first became a recipient of the District's special education services approximately two years ago, academically, and otherwise. When pressed, her special education case manager and Dr. Alegria, the head of Special Education in the South Orange-Maplewood School District, recognized M.R.D.'s issues but advised that there was

nothing they could or would do to help her because that would require them to help other children as well.

4. M.M.D. a ninth grader at Columbia High School came to the district from the local parochial school. With having only two days in school to date, she has not been able to participate in any traditional high school activities, including extra-curricular or other educational opportunities that would permit her to become the best version of herself, and which would also increase her opportunities for success in the future. As a young adult, her confidence in herself has decreased. She suffers emotionally as she has not made any new friends and remains home alone and isolated, spending most of her day on harmful social media apps such as TikTok.

5. Plaintiff Pamela Kim is a parent of Q.O.K., age 10, who is in the fifth grade at Jefferson Elementary School, and of W. G. K., age 5, who is a kindergartener at Marshall Elementary School.

6. Q.O.K. has consistently tested in the top percentiles and has performed in the classroom accordingly. Since the onset of remote learning, his performance has dropped significantly to the equivalent of consistent "C" grade or "D" graded work. And his emotional well-being and interest in

school have waned. More recently he has complained of frequent headaches after prolonged sessions in front of the computer.

7.  W.G. K. is experiencing her first year in elementary school without the foundational interaction with peers and teachers so critical to formative learning that naturally occurs in the classroom setting. The online technology and tools upon which remote learning is dependent, is an overwhelming obstacle for children of her age who are not yet fully literate. Trying to follow written or multi-step verbal instructions to go between scheduled links and class segments often causes W.G.K. and other students to partially or completely miss lessons altogether.

8. Plaintiffs Michael Witriol and Rachel Witriol are parents of T.E.W., age 6, who is a Kindergarten student at Tuscan Elementary School.

9. T.E.W. did not enter his Kindergarten classroom or meet his teacher in-person until January 20, 2021, and attended only two half-days of in-person learning before SOMSD returned to all-virtual instruction on January 27, 2021.  Plaintiffs' ability to coach, monitor, intervene and support T.E.W.'s virtual learning at home is severely limited by their responsibilities to their full-time jobs.

10. T.E.W. has been attending the YMCA's aftercare program in the same physical school building (Tuscan) nearly every school day since October 2020. The building has been deemed safe for the students and YMCA staff to operate the aftercare program. At additional expense to Plaintiffs, the YMCA program has provided crucial social, emotional and learning support for T.E.W. during this time as T.E.W. has been struggling with the social isolation of remote learning.

11. Plaintiff Michael Witriol was raised in Maplewood, and attended Clinton Elementary School, South Orange Middle School, and graduated from Columbia High School, and returned to raise his family here in large part due to SOMSD's excellent reputation. However, the same right to an education that was guaranteed to Plaintiff is being denied to his son, TEW.

12. Plaintiff Keith and Stephanie Stecker are parents of H.S., age 7, who is in the 2nd grade at South Mountain School, and A.S., who is in 10th grade at Columbia High School.

13. H.S. used to love learning and going to school. In the spring, when the schools first closed, he had almost no interaction with his teacher, and as a result of two parents who worked full time and could not take on the level of instruction that was necessary, he learned very little between mid-March

and June, with the exception of some reading that he did with his grandmother, and some math that he did with his grandfather. This school year, he has become increasingly frustrated and upset, and now lacks focus and engagement, and as a result is not learning and growing as he should. Virtual school lacks the needed time and tools for the teacher to ensure kids understand the lesson as the shortened day is rushed and understanding kid's behavior is limited over the screen. He is having outbursts and tantrums daily like a 4-year old, and often says he is "stupid" and "the dumbest kid in the class."

14. Plaintiffs Jennifer Greene and Bryan Savitz are parents of L.M.S., age 9, who is a 4th grader at Jefferson Elementary.

15. L.M.S. has been out of his school, Jefferson Elementary in Maplewood, New Jersey, since March of 2020. Right before the district closed down due to COVID-19, he was diagnosed with Eye Convergence issues by a privately hired Occupational Therapist and subsequently by a Pediatric Optometrist. After much struggle from Plaintiffs to get the district and administrations attention, L.M.S. finally received an IEP from the SOMA school district. His IEP is in both Reading and Writing. His IEP plan specifically states that he is to receive one hour per day of special

instruction in the subject of Reading, one hour per day of special instruction in Writing, and two individual OT sessions per week. This is simply not happening for him. This is of no fault of his teachers or OT professionals but is simply a result of the format that the school district is saying they are able to deliver remotely. L.M.S. is an only child and since COVID 19, and all of the back-and-forth announcements from the district, he has suffered not only educationally but emotionally. At the very beginning of this pandemic, it was an understandable situation. At this point it is abundantly clear that this is due to reckless negligence and incompetence.

16. Plaintiffs are extremely worried about L.M.S. The boy who he was in March of 2020 is not the boy he is now. He is severely depressed and his lack of drive, excitement and zest for learning and just being generally social, albeit always selectively, has all but vanished at this point. He is seeing a private therapist and doing as much physical activity as possible. His social emotional and educational well-being are severely damaged, we believe, due to the district's negligence, lack of vision, creativity and seemingly care.   He has now been diagnosed with Social Anxiety and has a hard time being around groups of more than one or two children because of

the isolation he has been forced to endure because of the schools have not reopened.

17. Coleen Lynch is a parent of R.T.L. who is in second grade at Marshall Elementary School and C.M.L. who is in kindergarten at Marshall Elementary.

18. R.T.L. is a special education student with an IEP. In October 2020, Plaintiff had a meeting with Mara Fox his case manager, his teachers Mrs. Wyche, Mrs. Kaeshafer and his behavior therapist Jill Saxon. Plaintiff let them know how much he was struggling with online learning and how he was unable to complete the work on his own. Unless Plaintiff sits with him the whole time, and walk him through the work, he does not participate. His lack of executive functioning makes it hard for him to do any type of work on the computer. The teachers repeatedly said that all the kids were behind. Shortly after Plaintiff appealed directly to Dr. Allegria, letting her know that R.T.L.'s IEP was not being followed, and that he was regressing. Her response was that she could not send a para to his home.

19. . Plaintiff Anna Ferguson is a parent of D.A.F., age 7, who is in the second grade at Marshall School and of M.E.F., age 5, who is a kindergartener at Marshall School.

20. D.A.F. is a special education student with an Individual Education Plan that includes In-Class Resource Support in Reading and Math for a total of 180 minutes a day. Additionally, he is entitled to 30 minutes of Counseling, 60 minutes of Occupational Therapy, and 30 Minutes of Physical Therapy a week. Because of Plaintiff's son's learning challenges, he has been unable to take advantage of almost any of the virtual versions of these. Because of the lack of in-person instruction that he requires, he has experienced significant regression, academically, socially, and physically. He has relied on full time school and related services to progress. He has become aggressive (sometimes physically), and is depressed and listless. His hypotonia worsened as a result of his inability to get OT and PT in-person. Consequently, he has been prone to constant injuries from falling, tripping, flopping, and flailing. He lost his interest and ability to participate in regular activities like playing with friends, going to a playground, riding a bike, or participating in sports. D.A.F. was at the top of his class (according to his teachers) as of March 2020. He is not the same child he was a year ago. He used to be a positive, happy boy who loved school and now he is an unhappy, emotionally dysregulated boy who hates school and learning. Multiple meetings with the Special Services team proved to be fruitless. At

one point, Special Services supervisor Karen Thomany implied that there was something wrong with D.A.F. that, as a 6 year old with a learning disability, he was unable to benefit from virtual learning. Plaintiffs were promised in October that a behaviorist would work with D.A.F. and even after following up the Special Services Department never delivered. The only thing that has worked to get D.A.F. to sit for virtual learning has been full time supervision.  We have paid thousands of dollars for consultants, therapists, pod learning groups, babysitters, and the Y.

21. Plaintiff Hannah Spector is a parent of M.S., age 9, who is in the fourth grade at Jefferson Elementary, H.S., age 7, who is in the second grade at Marshall Elementary, and S.S., who is in Kindergarten at Marshall Elementary.

22. M.S. went from being a good, studious, and willing to learn student, to a child who breaks down and cries almost every day. He does not want to do the work and will use any excuse to get out of not participate in any remote learning. H.S., a second grader with A.D.D., spends half the time rolling around on the floor, not sure of what he is supposed to be doing. S.S., a kindergartner who should be developing a love of school, hates it doesn't want to do an anything related to school. The whole situation is devastating

to Plaintiffs as the children are missing out on the very important early education intervention that is necessary for academic success in the future. Additionally, all of Plaintiff's children have had suffered mentally and emotionally during remote learning to the point where their young personalities have changed for the worse.

23. Plaintiff Laura "Lulu" French is the parent of C.B., age 6, a kindergartener diagnosed with Autism Spectrum Disorder.

24. When C.B. was evaluated by the district right before the beginning of the pandemic he was deemed to be academically average which is very good news for a young child that is developmentally delayed. However, C.B. has regressed significantly as a result of being having no in-person learning since March 2020. In fact, C.B has regressed significantly. Because of his emotional and behavioral challenges, C.B. needs consistent schooling from special education teaching professionals to make academic progress.

25. Virtual schooling is not an option for C.B. who will not stay engaged in a virtual small group setting and will often sign off and be unwilling to return. Plaintiffs were first introduced to virtual schooling last summer during the extended school year (ESY). The school district was in the midst of planning virtual schooling for the summer when the governor

announced that schools and day camps could meet in person.  Despite this,
the district decided to move forward with virtual schooling as the only
option for its special-ed population.

26. It was extremely difficult for Plaintiff to keep C.B. involved with what was
happening on the screen.  Plaintiff did her best to set him up with a quiet
space, a visual schedule, visual timers, and laminated visuals to represent
different activities.  When all our efforts continued to fail, Plaintiff called a
meeting to ask for one-on-one virtual ABA and in-person therapy.

27. At the meeting, Plaintiff explained that the only way C.B. would stay on the
computer was if he could switch to ABA and work with a para one-on-one
for his academics.  Plaintiffs were denied on the grounds that — since he
was not previously determined to need ABA — he could not switch to ABA
for virtual learning.

28. Plaintiff also asked if C.B. could meet with his district therapists outdoors
so that he could work with them in person, and they told me that that was
not possible even though it was legally permitted by the state.  What was
provided was an abbreviated online class schedule which meant longer
breaks at home waiting for his next 15 minute "class." When C.B. did have
a virtual session in a small group setting, C.B.  would quickly end any

engagement with the session, especially if the work was challenging in any way.

29. Plaintiff has done our best to provide opportunities for him over the course of the pandemic, but we don't have the know-how, time, or resources to provide for him what in-person schooling does for him academically, socially, and emotionally.  The district has utterly failed our child by not allowing in-person schooling for their most vulnerable students.

30. The South Orange-Maplewood School District ("SOMSD") is a school district in the State of New Jersey that serves the residents of both Maplewood and South Orange.

31. SOMSD provides public education to the residents of South Orange and Maplewood from PreK though twelfth grade. The schools located in the SOMSD are: Montrose Early Childhood Center; Tuscan Elementary School; South Mountain Elementary School; Seth Boyden Demonstration School; Marshall Elementary School; Jefferson Elementary School; Clinton Elementary School; Maplewood Middle School; South Orange Middle School; and Columbia High School.

32. The South Orange-Maplewood Board of Education ("Board") is the governing body of the South Orange-Maplewood School District

("District") with responsibility for developing policy to ensure the proper care, management and control of District affairs. The Board consists of nine citizens elected at large by the voters of South Orange and Maplewood. Board members serve three-year terms, with three members of the Board subject to election each year.

33. In addition to setting policy, the Board hires the superintendent; approves staff hirings, transfers, resignations, terminations, and leaves of absence; approves expenditures; approves educational programs (curriculum); and otherwise ensures that the facilities and equipment are available to support learning and teaching in the District. The Board also approves the budget for the School District.

34. Dr. Ronald G. Taylor ("Superintendent") is the Superintendent of the South Orange-Maplewood School District. As the District's Superintendent, Dr. Taylor is the chief executive officer for SOMSD. He is responsible for the effective operation of the District; for the general administration of all instructional, business or other operations of the District; and for advising and making recommendations to the Board with respect to such activities. He is responsible for enforcing all provisions of law and all rules and regulations relating to the management of the schools within the District,

and other educational, social and recreational activities under the direction of the South Orange-Maplewood Board of Education. Dr. Taylor is the individual who is ultimately responsible for closing all of the schools in the South Orange-Maplewood School District since the beginning of the COVID-19 pandemic.

35. Defendant South Orange Maplewood Education Association ("SOMEA") is the sole and exclusive representative for collective negotiations concerning the terms and conditions of employments for all teachers, bus drivers, IT support staff, and secretaries under contract with the District and the Board.

36. Rocio Lopez is the President of SOMEA.

## **NATURE OF ACTION**

37. With the onset of the COVID-19 pandemic, Defendants have effectively put the interests of the children they serve dead last. With their arbitrary rules that fly in the face of the recommendations of experts across different disciplines, the children of the District have been deprived of their right to an education. Sadly, there has been no one to speak for our children over the last ten months as they silently suffered with remote learning. This lawsuit seeks to remedy the situation on their behalf.

38. This Action is brought pursuant to 42 U.S.C. § 1983, on the grounds that Defendants have violated Plaintiffs' constitutionally and federally protected rights, including specifically: (1) the right to substantive due process (U.S. Const. amend. XIV); (2) the right to equal protection, free from arbitrary treatment by the State (U.S. Const. amend. XIV); (3) the right to equal and meaningful access to education, free from arbitrary state action resulting in a disparate impact on those with disabilities (Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq.; Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, et seq.; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq.)).

39. With the school year still operating remotely almost a year after the District schools were closed, time is of the essence. The Court should not hesitate to secure Plaintiffs' fundamental rights in securing a basic minimum education for their children are preserved and protected from Defendants' arbitrary actions.

## JURISDICTION & VENUE

40. Jurisdiction is proper pursuant to 42 U.S.C. § 1983 as it related to Defendants' violation of Plaintiffs' constitutional rights to due process and

equal protection as per the Fourteenth Amendment to the United States Constitution.

41. Further, federal question jurisdiction exists under 28 U.S.C. § 1331 and 1343.

42. The court has the authority to award the relief requested by Plaintiffs as per 28 U.SC. §§ 2291; 1343 (a) and 42 U.S.C. § 1983.

43. Attorneys fees and costs may also be awarded as per 42 U.S.C. § 1988.

44. Supplemental jurisdiction exists over Plaintiff's State Law Claims pursuant to 28 U.S.C. § 1367.

45. The events complained of herein took place within the jurisdiction of the United States District Court for the District of New Jersey.

## **STATEMENT OF CLAIMS AGAINST DEFENDANTS**

46. At the onset of the COVID-19 pandemic in 2020, on March 13, 2020, Dr. Taylor announced that as of "Monday, March 16 thru March 27, 2020 we have made the decision to enact our SOMSD emergency closure plan and all District schools will be closed for a period of at least two-weeks." *See* **Exhibit "A."**

47. On April 7, 2020 Dr. Taylor announced that all schools in the District would be closed indefinitely pursuant to the order of Governor Phil Murphy. *See* **Exhibit "B."**

18

48. On July 31, 2020, Dr. Taylor announced that school would re-open in September and that families would have the option of choosing "Virtual Only Instruction" or "Hybrid Instruction." *See* **Exhibit "C."**

49. "Virtual Only Instruction" was defined as follows: **"Option 1:  Virtual Instruction (online/remote)**: Selecting this option means your child will learn at home. Virtual instruction will be provided online via the District's new learning management system, 'Canvas.' Students will be provided virtual lessons with teachers and classmates, as well as self-paced activities, projects, and assignments. Daily attendance will be taken and students will have a full course-load of instruction.  Teachers will use Canvas to provide distance learning for students." *See* **Exhibit "C."**

50. "Hybrid Instruction" was defined as follows: "**Option 2: Hybrid Instruction (combination in-person/online)**: Selecting this option means your child will attend school in person two* days per week on an alternating schedule and will learn from home virtually using Canvas during the remainder of the week. This will allow for much smaller class sizes to meet the social distancing requirements. Students would be assigned specific days to attend each week. SOMSD will make every effort to schedule students from the same family on the same days.  In both hybrid

and virtual learning models, your child will have access to live support and conferring sessions with SOMSD instructors." *See* **Exhibit "C."**

51. On August 14, 2020, Dr. Taylor announced that only remote or virtual learning would be offered when school reopened in September 2020. He also announced that students would be able to return to in-person hybrid learning on November 12, 2020. *See* **Exhibit "D."**

52. On October 22, 2020, Dr. Taylor announced that the November 12, 2020 return to school date was being reassessed due to concerns regarding ventilation updates in the school buildings. *See* **Exhibit "E."**

53. On October 27, 2020, Dr. Taylor announced that in-person learning would not return to the South Orange Maplewood School District until January 19, 2021. *See* **Exhibit "F."**

54. On January 12, 2021, Dr. Taylor announced that in-person hybrid learning would only be opened to PreK though second grade, sixth grade and ninth-grade students.  Dr. Taylor explained that "[a]fter conferring with our local towns' health departments and internal district health professionals, the District has decided that we will extend the duration of the Phase 3 re-entry stage and pause the launch of Phase 4 (which was set to begin on January 25). *See* **Exhibit "G."**

55. Since March 13, 2020, Defendants have only offered a total of four days of in person learning for students in PreK though second grade, sixth grade and ninth grade. Students in grades three to five, seven and eight, and ten through twelve had had no in-person instruction since March 13, 2020.

56. The district schools were closed to in-person learning on January 26, 2021, and then are presently set to resume a hybrid schedule on February 1, 2021.

57. To date, all of the schools in the District remain closed to in-person learning.

58. Throughout the fall and winter of 2020/2021, as the District prepared to open school for in-person hybrid learning on January 19, 2021, SOMEA and its leadership have acted in bad faith and have knowingly made material misrepresentations with respect to their reasons for refusing to return to in-person learning, ultimately causing schools to remain closed to in-person learning and compelling the Board to file suit against SOMEA in the Superior Court of New Jersey.

59. On February 22, 2021, the Board filed a Verified Complaint ("Verified Complaint") in the Superior Court of New Jersey, Chancery Division, General Equity Part, Docket No.: ESX-C-31-21. *See* **Exhibit "I."**

60. The Verified Complaint alleges that SOMEA is engaging in an unlawful strike.

61. Defendants and SOMEA have also been engaged in ongoing mediation through the New Jersey Public Employment Relations Committee.

62. On March 9, 2021, the Board announced that is decided to discontinue the mediation process with SOMEA, as SOMEA was using mediation as a tool to hide bad faith negotiations on behalf of a select few at the expense of the return of close to 1500 students. *See* **Exhibit "J."**

63. Since the start of remote-only learning in September 2020, Defendants decided to move all of the "specials" such, art, music and physical education classes, to the afternoon hours. With Plaintiffs and other families in the district needing to utilize the South Mountain YMCA's aftercare program, their children were not able to participate in any of these specials, and continue to be denied further education in these areas with the current schedule that is in place.

64. Additionally, Columbia High School and other schools in the District have had their school hours shortened to half-days, every day of the week. This schedule will continue even as hybrid learning takes place. No children in the district will have more than four hours in the building, effectively

depriving them of hundreds of hours instructional time over the course of the school year.

65. More significantly, the South Mountain YMCA has been, and continues to provide, after-care services for Plaintiff's children, and other children in the District, **in the District's school buildings,** buildings that were collectively deemed "unsafe" by Defendants, without any significant spread of COVID-19.

66. As a result of Defendants' actions, Plaintiffs' children and many other children in the district have experienced ineffective and substandard learning through remote means, all the while forcing children into isolation, and causing academic stagnation and regression.

67. More significantly, Defendants' actions have harmed children's mental and emotional health and have put the children in the district at risk for long-term mental health problems.

68. Also, there is little evidence that with appropriate safety measures in place, such as masks, social distancing, and proper ventilation, school- aged children transmit COVID-19 to teachers or adults in a school setting.

69. Pending in the United States District Court for the District of New Jersey is the action of *Dembiec, et als, v. Scotch Plains Fanwood Regional School*

*District*, Civil Action No.: 20-cv-20188. The *Dembiec* Complaint outlines the relevant scientific studies that collectively show that COVID-19 is not a risk amongst school aged children *See* **Exhibit "H."**. Plaintiffs hereby incorporate the paragraphs of the *Dembiec* Complaint as though fully set forth herein.

70. Science supports school reopening full-time five days a week.

71. School-based transmission is minimal relative to non-school-based transmission and must be contextualized relative to community spread.

72. The COVID-19 School Dashboard, put into place by data scientists and superintendents at over 5,000 schools, comprising over four million students and 1.3 million staff members, gathers information on new COVID-19 cases as broken down by key variables including school type, age of children, PPE usage, density of region, etc. When looking at New Jersey elementary school data, we can see that as of early December 2020, for staff who are teaching in public elementary school remotely, the infection rate is 0.30%. For staff teaching in schools at 50% capacity, it is 0.32%. For staff who are teaching at 90% or more capacity, it is 0.26%. (*See* https://covidschooldashboard.com).

73. The infection rate in elementary school staff teaching remotely is actually 15% higher than for staff teaching full-time in person. In all cases, it is significantly lower than the rate of infection in the matched surrounding community samples (e.g., 4.8%, 4.2%, 4.1%). In communities that have in-person schooling, the overall infection rate is not higher than that of communities with remote schooling. This suggests that not only is re-opening elementary schools full-time not exacerbating spread of COVID-19 to the teachers, but also the larger community. (*See* https://covidschool dashboard.com).

74. Children ten and under are unlikely to be infected with COVID-19, relative to adults. If they are infected, they are unlikely to face severe complications from COVID-19. (*See* https://www.cureus.com/articles/35775-prevalence-of-asymptomatic-sars-cov-2-infection-in-children-and-adults-in-marion-county-indiana).

75. In a community sample of children, very few children under ten years of age tested positive for COVID-19, either symptomatically or asymptomatically, i.e., one case, out of 119 confirmed cases. This is now the third such community study to document either no cases or a single case of COVID-19 in children under ten. (*See* https://pubmed.ncbi.

nlm.nih.gov/32289214).

76. Even in a symptomatic sample, the rate of infection for children ages five to

nine is 0.25%, far lower than adult infection which was 98.3%. (*See*

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7147903/).

77. When children do get COVID-19, the rate of hospitalization is .008 %. (*See*

https://www.cdc.gov/coronavirus/2019-ncov/hcp/pediatric-hcp.html).

78. Despite initial concerns that children would asymptomatically spread

COVID-19, the most recent research does not support elementary-aged

children as super-spreaders or highly infectious. It is extremely difficult to

obtain data on asymptomatic children, who are infrequently tested, but a

community-based sample in the US found that asymptomatic children do

not seem to be spreading the virus. (*See* https://www.cdc.gov/coronavirus

/2019-ncov/hcp/pediatric-hcp.html*).*

79. Even in symptomatic cases, children transmit the virus at far lower rates

than adults. (*See* https://www.nytimes.com/2020/08/14/health/older-

children-and-the-coronavirus-a-new-wrinkle-in-the-debate.html).

80. Both globally and locally, elementary schools have safely reopened, even in

the context of high community spread. (*See* **Exhibit "H"**).

81. Local schools, such as Our Lady of Sorrows School and St. Rose of Lima, have been in school for five days a week since the beginning of the school year, with no major outbreaks despite being in school full-time. This lack of outbreaks has held even in areas with high community spread, and even in schools in which social distancing occurs at less than the recommended six feet. (*See* https://tucson.com/news/local/despite-covid-19-cases-surge-virus-spread-in-tucson-schools-remains-low/article.*)*

82. The American Academy of Pediatrics ("AAP") recommends that learning take place while the students are physically present in school.

83. The AAP noted the health benefits that would otherwise be lost, such as child development, social and emotional skills, reliable nutrition, physical, speech and mental health therapy, as well as opportunities for physical activity. (*See* https://services.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/*)*.

84. The AAP also explained that lengthy time away from school and associated interruption of supportive services often results in isolation, making it difficult for schools to identify and address important learning deficits as

well as child and adolescent physical or sexual abuse, substance use, depression, and suicidal ideation.

85. Furthermore, it is widely accepted that special education students are particularly harmed by remote learning.

86. Under federal law, students with disabilities are guaranteed a Free Appropriate Public Education (FAPE), as incorporated through the IDEA ACT 34 C.F.R. § 300.101, and Title III of the Americans with Disabilities Act of 1990 ("ADA"), § 504 of the Rehabilitation Act of 1973.

87. Plaintiffs and other parents in the district have expressed their distraught concern with remote learning in the District. They have reported that their children received none, or nearly none, of the individualized and specialized instruction guaranteed by law when schools closed in March 2020. The District has made zero provisions for delivering these federally mandated services to special education children, despite the federal funding the state received that was conditioned upon providing these services. Accordingly, children with disabilities were especially harmed by Defendants' actions.

88. Many individualized education programs (IEPs) simply cannot be implemented in a virtual-learning environment. For example, many IEPs

require individualized instruction, such as a one-on-one aide. Failure to

comply with a child's IEP can have grave consequences, such as regression.

89. While not unique to students with disabilities, socialization in schools is

critical for special needs children.

90. The Center for Disease Control ("CDC") recommends that all students

return to school for in-person learning.

91. The CDC reported that the lack of in-person educational options

disproportionately harms low-income and minority children and those

living with disabilities. These students are far less likely to have access to

private instruction and care and far more likely to rely on key school-

supported resources like food programs, special education services,

counseling, and after-school programs to meet basic developmental needs.

(*See* https://www.cdc.gov/coronavirus/2019-ncov/community/schools-

childcare/schools.html).

## COUNT ONE

**42 U.S.C. § 1983**
**Violation of Due Process under the Fourteenth Amendment**

92. Plaintiffs hereby incorporate herein by reference each and every allegation

contained in the preceding paragraphs of this Complaint as though fully set

forth herein.

93. The Due Process Clause of the Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property, without due process of law. U.S. Const.14 amend XIV.

94. In particular, the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. *Washington v. Glucksberg*, 521 U.S. 702, 720-721 (1997). Plaintiffs and their children have a fundamental right to a basic, minimum education.

95. Access to a foundational level of literacy provided through public education has an extensive historical legacy and is so central to our political and social system as to be "implicit in the concept of ordered liberty." *Id*.

96. The Due Process Clause has also been read to recognize that certain interests are so substantial that no process is enough to allow the government to restrict them, at least absent a compelling state interest. *Id*. at 719-21.

97. The Constitution provides a fundamental right to a basic minimum education. *Gary B. v. Whitmer*, 957 F.3d 616 (6th Cir. 2020), *vacated en banc without decision*, 958 F.3d 1216 (6th Cir. 2020).

98. Defendants have deprived Plaintiffs and their children of this fundamental right in violation of the Fourteenth Amendment to the U.S. Constitution, by effectively denying children a basic minimum education and their fundamental right to literacy.

99. The United States Constitution entitles Plaintiffs to be free from any burden to a fundamental right unless the infringement is narrowly tailored to serve a compelling state interest.

100.    Defendants lack any compelling, or even rational, interest for burdening Plaintiffs' children of their fundamental right to a basic minimum education.

101.    The weight of the evidence shows that children's transmission and infection rates cannot justify school closures. Defendants further ignore that the evidence of mortality risk and severe adverse health outcome risk to children from COVID-19 disease is virtually non-existent.

102.    Risk to teachers may be managed just as risk to other essential workers is managed in New Jersey, by offering choices and providing protection. The challenges posed by the situation pale in comparison to the harm being inflicted on Plaintiffs' families through the deprivations of their constitutional rights.

103.    Plaintiffs have no adequate remedy at law and will suffer serious and

irreparable harm to their constitutional rights unless Defendants are

enjoined from shutting down the schools.

104.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to

declaratory relief and temporary, preliminary, and permanent injunctive

relief invalidating and restraining enforcement of the Defendants' Order to

shut down the schools.

## COUNT TWO

**42 U.S.C. § 1983**
**Violation of the Equal Protection Clause under the Fourteenth**
**Amendment Arbitrary School Closures**

105.    Plaintiffs incorporate by reference each and every allegation contained

in the preceding paragraphs of this Complaint as though fully set forth

herein.

106.    The Equal Protection Clause prohibits governmental classifications

that affect some groups of citizens differently than others. *Engquist v. Or.*

*Dept. of Agric.,* 553 U.S. 591, 601 (2008). The touchstone of this analysis is

whether a state creates disparity between classes of individuals whose

situations are arguably indistinguishable. *Ross v. Moffitt,* 417 U.S. 600, 609

(1974).

107.     In addition to the pivotal role of education in sustaining our political and cultural heritage, denial of education to some isolated group of children poses an affront to one of the goals of the Equal Protection Clause which is the abolition of barriers which present unreasonable obstacles to advancement on the basis of individual merit.

108.     Paradoxically, by depriving the children of any disfavored group of an education, we foreclose the means by which that group might raise the level of esteem in which it is held by the majority.

109.     Defendants' shutdown of public schools violates Plaintiffs' and their children's right to equal protection.

110.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their and or their children's constitutional rights unless Defendants are enjoined from shutting down public schools.

111.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Defendants' Orders and any associated guidance documents.

## **COUNT THREE**

**42 U.S.C. § 1983**
**Violation of Federal Disability Rights Statutes; Failure to Provide**
**Appropriate and Equal Educational to**
**Disabled Students**

112.     Plaintiffs incorporate herein by reference each and every allegation

contained in the preceding paragraphs of this Complaint as though fully set

forth herein.

113.     Federal law provides all disabled children in New Jersey the right to a

free appropriate public education, individualized education plans conferring

educational benefit, appropriate identification and evaluation, and the right

to be free from discrimination on the basis of any disability, including

through the exclusion from or deprivation of equal access to the educational

opportunities. *See* 20 U.S.C. § 1400, et seq. (Individuals with Disabilities

Education Act ("IDEA")); 42 U.S.C.A. § 12131, et seq., (Title II of the

Americans with Disabilities Act of 1990 ("ADA")); 29 U.S.C. § 794, et

seq., (Section 504 of the Rehabilitation Act of 1973).

114.     Defendants' arbitrarily imposed restrictions on the reopening of

schools, including the forced closure all schools in the District and the

imposition of online learning, deprives Plaintiffs' children of these rights,

which are secured by the above-cited federal laws.

115.    Defendants acted knowingly, recklessly, and with deliberate indifference to the rights of Plaintiffs by forcibly denying disabled students with specialized instruction and related services commensurate with the schools' obligations under federal law, as well as from providing disabled students equal access to education as required by federal law.

116.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm in the form of the deprivation of educational opportunities, related services, and other educational and non-discrimination rights secured by federal law, unless Defendants are enjoined from implementing and enforcing the school closure.

117.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the state orders and any associated guidance.

## COUNT FOUR

**Deprivation of Thorough and Efficient System
of Free Public Schools – N.J.S. 10:6-2 & N.J. Constitution, Art. 8, § IV ¶**

118.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

35

119.    N.J. Constitution, Art. 8, § IV, provides for the Maintenance and Support of thorough and efficient system of free public schools.

120.    Here, the Defendants have failed in their obligation to provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all children.

121.    Distance learning does not satisfy the Defendants' obligation to provide Plaintiffs and those similarly situated their constitutional right to an adequate education.

122.    Plaintiffs have no adequate remedy at law and will suffer continuous, serious and irreparable harm to their state constitutional rights unless Defendants are enjoined from implementing and enforcing their broad prohibitions on in-person education and the Defendants are enjoined from providing distance learning while all the surrounding communities are providing in school learning.

123.    Pursuant to N.J.S. 10:6-2, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Defendants' Orders and any associated guidance documents.

## COUNT FIVE

### Equitable Relief for Violation of New Jersey Law
### Against Defendant SOMEA

124.     Plaintiffs incorporate herein by reference each and every allegation

contained in the preceding paragraphs of this Complaint as though fully set forth

herein.

125.     Public employee strikes, concerted refusal to work, concerted action

designed to deny government the necessary manpower, and work stoppages

are unlawful under New Jersey law. *See Bd. of Ed. Bor. of Union Beach v.*

*N.J.E.A.*, 53 N.J. 29 (1968); *Board of Educ., Tp. of Middletown v.*

*Middletown Tp. Educ. Ass'n,* 352 N.J. Super. 501 (Ch. Div., 2001); *Board of*

*Ed. of City of Asbury Park v. Asbury Park Ed. Ass'n*, 145 N.J.Super. 495

(N.J.Super.Ch. 1976); *In re Fair Lawn Ed. Assoc.*, 63 N.J. 112 (1973) *cert.*

*denied.* 414 U.S. 855 (1973); *In re Block*, 50 N.J. 494 (1967); and *Passaic*

*Tp. Bd. of ELL v. Ed. Assn.*, 222 NJ. Super. 298 (App. Div. 1987).

126.     SOMEA must perform the official duties for which they are employed

at locations designated by the District. SOMEA and its employees violate

New Jersey law and public policy by withholding services pursuant to the

strike or concerted refusal to attend work.

127.     Through their action, SOMEA and its members have created an emergency and have materially and substantially interfered with the District's primary responsibility and obligation to ensure that all District students have the opportunity to attain their educational objectives, and have also violated Plaintiffs' constitutional rights and Plaintiffs' rights under the applicable federal disability rights statutes.

128.     The actions of SOMEA and its members are designed to prevent the District from abiding by requirements from the Governor of the State of New Jersey and the New Jersey Department of Education, and to deny Plaintiffs' their Constitutional rights and rights under the applicable federal disability rights statutes.

129.     The concerted efforts by SOMEA and its members in refusing to return to work at the school buildings will cause irreparable harm to Plaintiffs which must be immediately remedied.

130.     SOMEA's illegal strike will result in harm to Plaintiffs by depriving the students of in-person instruction, which New Jersey identifies as critical.

131.     All these consequences justify the court's equitable intervention and entry of preliminary and injunctive relief restraining and enjoining the

Association members from violating the law by participating in the concerted refusal to report to work at the schools.

132.    Plaintiffs are further entitled to monetary damages caused by SOMEA's violation of New Jersey law in an amount to be proved at trial.

## COUNT SIX

### Injunctive Relief Against SOMEA

133.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

134.    There exists a real and present controversy between the parties pertaining to the illegal strike.

135.    The concerted efforts by SOMEA and its members in refusing to return to work at the school buildings will cause irreparable harm to Plaintiffs and must be immediately remedied.

136.    SOMEA's illegal strike will result in harm to Plaintiffs by depriving the students of in person instruction, and violating their constitutional rights and rights under the applicable federal disability rights statutes.

137.    All of these consequences justify the court's equitable intervention and entry of preliminary and injunctive relief restraining and enjoining SOMEA

and its members from violating the law by participating in the concerted refusal to report to work at the school and any compensatory damages.

## COUNT SEVEN

### Declaratory Judgment Against SOMEA

138.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

139.     There exists a real and present controversy between the parties pertaining to the concerted effort and/or illegal strike by SOMEA and its members.

140.     By reasons of the illegal strike and/or concerted efforts by SOMEA and its members, a declaratory judgment is both necessary and proper to determine the rights, obligations, and liabilities that exist with respect to the parties.

## COUNT EIGHT

### Bad Faith/Fraud/Deceit against Lopez and SOMEA

141.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

142.    Throughout the fall and winter of 2020/2021, as the District prepared to open school for in-person hybrid learning on January 19, 2021, SOMEA and its leadership have acted in bad faith and have knowingly and intentionally made material misrepresentations with respect to their reasons for refusing to return to in-person learning, in reckless disregard of the truth, and with knowledge and belief of its falsity.

143.    Such representations were made to purposefully keep the schools in the district closed to in-person learning and to deny Plaintiffs their constitutional rights and their rights under state and federal law.

144.    SOMEA and Lopez reasonably expected that their representations Plaintiffs were intended to reach Plaintiffs.

145.    The actions of Defendants have kept and continue to keep Plaintiffs from in-person learning and continue to cause Plaintiffs' irreparable harm in violation of their rights under state and federal law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully ask this Court to grant Plaintiffs the following relief:

1. A declaratory judgment that the Defendants shutting down of all in-person learning is unconstitutional, and in violation of the Individuals with

Disabilities Education Act (20 U.S.C. § 1400, et seq.); Title II of the

Americans with Disabilities Act of 1990 (42 U.S.C. § 12131, et seq.); and/or

Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794, et seq.), and

N.J.S. 10:6-2, and N.J. Constitution, Art. 8, § IV; and

2. Temporary, preliminary, and permanent injunctive relief enjoining

Defendants from further denying all in-person learning;

3. Temporary, preliminary, and permanent injunctive relief enjoining

the shutdown of all in–person learning;

4. An order requiring that Defendants issue new guidance reinstating

in-person instruction for at least five full days per week in all schools

without delay; and

5. Entry of temporary, preliminary and permanent injunction

restraining SOMEA and its members from:

a. Engaging in, encouraging, or lending support or

assistance of any nature to any strike, work stoppage, slow down, or

concerted effort to deny Plaintiffs their rights under state and federal law, or

otherwise interfering with the opening of in-person learning;

b. Soliciting others, including students, their parents or

guardians, SOMEA employees, and other unions, to engage in or participate

42

in any strike, work stoppage, slow down, or concerted effort to deny

Plaintiffs their rights under state and federal law, or otherwise interfering

with the opening of in-person learning;

       c.      Threatening or coercing any person from discharging

normal or substitute duties;

       d.      Interfering by picketing or otherwise inhibiting both the

free ingress and egress of employees, agents, students, and other authorized

persons to and from the schools and facilities operated by the District; and

       e.      Taking unjustified sick, personal, or other leave in

concert with or in aid of any strike or slow down.

       6.      Compelling SOMEA teachers to immediately report to their

classrooms and instruct the students in-person full-time, five days a week,

and to pursue individual grievances through the grievance process; pursuant

to the Collective Bargaining Agreement; and

       7.      Damages in an amount to be determined at trial for all tort

damages, compensatory damages, consequential damages, incidental

damages, indirect and direct damages, special damages, punitive damages,

treble damages, expert fees and costs, attorneys' fees and costs, related to the

ongoing school closure,

8.      Any other such further relief to which Plaintiffs or which the

Court determines to be just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury.


Dated:  3/10/2021                                *Keri Avellini, Esq.*

Keri Avellini, Esq.
60 Evergreen Pl., Ste. 502
East Orange, New Jersey  07018
(973) 675-8277
keri@goldsteinlaw.com
Attorneys for Plaintiffs

**STATEMENT PER LOCAL RULE 10.1**

Christopher Donohue
15 Lenox Terrace
South Orange, NJ 07079

Anna Ferguson
507 Page Terrace
South Orange, NJ 07079

Jennifer Greene & Bryan Savitz
403 Vose Ave.
South Orange, NJ 07079

Pamela Kim
256 Charlton Ave
South Orange NJ 07079

Coleen Lynch
281 Underhill Road
South Orange 07079

Keith & Stephanie Stecker
380 Harding Drive
South Orange 07079

Michael & Rachel Witriol
83 Courter Avenue
Maplewood 07040

Hannah Spector
417 Clark Street
South Orange, NJ 07079

Laura French
10 Briarcliff Ct.
Maplewood, NJ  07040

South Orange-Maplewood School
South Orange-Maplewood Board of Education
Dr. Ronald G. Taylor, Superintendent of South Orange Maplewood School District
525 Academy Street
Maplewood, NJ 07040

South Orange Maplewood Education Association
2 Jefferson Avenue
Maplewood, NJ 07079

Rocio Lopez
228 Clarken Drive
West Orange, NJ 07052